IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HORIZON LINES OF PUERTO RICO, INC.,

    Plaintiff,

v.

LOCAL 1575, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION AFL-CIO,

    Defendant.

CIVIL NO. 08-1611 (RLA)

## ORDER AFFIRMING ARBITRATION AWARD

This action was initially filed in state court by LOCAL 1575, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION AFL-CIO ("LOCAL 1575" "UNION") seeking judicial review of an arbitration award issued on April 1, 2008. HORIZON LINES OF PUERTO RICO, INC. ("HORIZON"), removed the suit to this forum and requested that the arbitration award be affirmed which petition is currently before us for disposition.

### PROCEDURAL BACKGROUND

The parties to this action are signatories to a valid Collective Bargaining Agreement ("CBA") in effect during all pertinent times. Claims initiated by LOCAL 1575 on its own behalf or on behalf of employees are subject to arbitration pursuant to the CBA's Grievance and Arbitration Clause, Art. XVI Sec. 2.

The parties to this suit appeared before Arbitrator JORGE E. RIVERA DELGADO of the Conciliation and Arbitration Bureau of the

**CIVIL NO. 08-1611 (RLA)**                                                           **Page 2**

Puerto Rico Department of Labor who held a hearing on September 24, 2007.

The parties could not agree on a submission of the issues presented for review so each of them presented its own proposed version of the issues. The arbitrator, pursuant to the Department of Labor Regulations framed the issues for resolution as follows: (1) whether the matter was arbitrable; (2) whether the Union had waived its claim, and if not, (3) whether HORIZON had violated the CBA by hiring an individual for the "floater" position.

The arbitrator found that the conduct questioned by the Union was arbitrable and accepted it as having been timely submitted. Further, he determined that LOCAL 1575 was not estopped from questioning the practice at issue.

On April 1, 2008 the arbitrator issued his award and concluded that the employer had not violated the CBA.

Plaintiff initially instituted this action in state court seeking review of an arbitration award disposing of an alleged violation of the CBA. The suit was timely removed to this forum pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), which completely preempts local claims based on breach of contracts "between an employer and labor organization representing employees in an industry affecting commerce." Santiago Sanchez v. Gate Eng'g Corp., 193 F.Supp.2d 392, 394-396 (D.P.R. 2002). *See, i.e.*, Fitzgerald v. Codex Corp., 882 F.2d 586, 587 (1st

**CIVIL NO. 08-1611 (RLA)**                                                           **Page 3**

Cir. 1989) (citations and internal quotation marks omitted) ("For instance, in the area of labor disputes, an action brought in state court based on a collective bargaining agreement subject to the Labor Management Relations Act (LMRA") can be removed to federal court without having to comply with the well-pleaded complaint rule. The rationale for this decision is that the preemptive force of § 301 of the LMRA is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Such an action is necessarily federal in character and thus removable to federal court."

## SCOPE OF REVIEW

It is well established that a federal court's review of an arbitrator's award is "extremely narrow and exceedingly deferential". E. Seaboard Const. Co., Inc. v. Gray Const., Inc., 553 F.3d 1 (1st Cir. 2008) (citation omitted); Kashner Davidson Sec. Corp. v. Mscisz, 531 F.3d 68, 74 (1st Cir. 2008); U. Mass. Mem'l Med. Ctr., Inc. v. United Food and Commercial Workers Union, 527 F.3d 1, 5 (1st Cir. 2008). Judicial review of an arbitration award is "among the narrowest known in the law." E. Seaboard, 553 F.3d at 3 (citation omitted); Coastal Oil of New England, Inc. v. Teamsters Local, 134 F.3d 466, 468 (1st Cir. 1998).

"A court's review of an arbitration award is highly deferential because the parties have contracted to have disputes settled by an arbitrator and thus, it is the arbitrator's view of the facts and the

**CIVIL NO. 08-1611 (RLA)**                                                              **Page 4**

meaning of the contract that they have agreed to accept." E. Seaboard, 553 F.3d at 3 (internal citations and quotation marks omitted); U. Mass. Mem'l Med. Ctr., 527 F.3d at 5.

"When parties include an arbitration clause in their collective-bargaining agreement, they are choosing to forego a number of legal options in favor of having their disputes regarding the construction of that contract settled by an arbitrator. As this was the bargain the parties struck, they are bound by the arbitrator's decision." Ramos-Santiago v. United Parcel Serv., 524 F.3d 120, 124 (1st Cir. 2008).

In general, a reviewing court does not attend claims of legal or factual error the way an appellate court reviews a lower court's decisions. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); Coastal Oil, 134 F.3d at 468; Wheelabrator Envirotech v. Mass. Laborers Dist. Council Local 1144, 88 F.3d 40, 43 (1st Cir. 1996).

The arbitrator's interpretation of the collective bargaining agreement should be confirmed if, within the four corners of the agreement, there is any plausible basis for that interpretation. Coastal Oil, 134 F.3d at 468, Wheelabrator, 88 F.3d at 43. The mere fact that the court would interpret the agreement differently does not constitute grounds for reversal. United Steelworkers of America v. Enter. Wheel and Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Dorado Beach Hotel Corp. v. Union de

**CIVIL NO. 08-1611 (RLA)**                                                **Page 5**

---

Trabajadores de la Industria Gastronomica de Puerto Rico, 959 F.2d 2, 4 (1st Cir. 1992).

If the agreement's language, taken in context with the surrounding circumstances, is susceptible to different meanings, a reviewing court may not intervene in the arbitrator's choice between two permissible interpretations. Dorado Technical Serv. v. Union General de Trabajadores, 961 F.2d 317, 320 (1st Cir. 1992).

An arbitrator's decision, however, is not totally immune from judicial scrutiny. Larocque v. R.W.F., Inc., 8 F.3d 95, 96-97 (1st Cir. 1993); Dorado Beach Hotel, 959 F.2d at 4. *See*, Kashner, 531 F.3d at 74 ("[a]n arbitration award... is not utterly impregnable") (citation and internal quotation marks omitted).

The courts have also vacated awards when the arbitrator's decision was found to be in "manifest disregard of the law".

"This Court has recognized a very limited exception under which we may vacate an arbitration award when there is evidence that the arbitrator acted in 'manifest disregard of the law.' To establish such an exception, the challenger must show that the arbitration award complained of is: (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact. To succeed, there must be some showing in the record, other than the result obtained, that the arbitrator knew the law and expressly

**CIVIL NO. 08-1611 (RLA)**                                                              **Page 6**

disregarded it." Ramos-Santiago, 524 F.3d at 124 (internal citations, quotation marks and brackets omitted). *See also*, Kashner, 531 F.3d at 74; Coastal Oil, 134 F.3d at 469; Wheelabrator, 88 F.3d at 43-44.

"There are some exceptions where a court will overturn an arbitral award. The first set of exceptions is codified in the Federal Arbitration Act ('FAA') in section 10(a). This section limits a court's intervention to specific and enumerated instances. We have found that it authorizes vacatur of an award in cases of specified misconduct or misbehavior on the arbitrator's part, action in excess of arbitral powers, or failures to consummate the award. The second set of exceptions derives from our inherent power to vacate arbitral awards and is very narrow. This second set may arise in labor arbitration when either (1) an award contravenes the plain language of the applicable contract or (2) when an arbitrator disregards applicable law." U. Mass. Mem Med. Ctr., 527 F.3d at 5-6 (internal citations, quotation marks and footnotes omitted). *See also*, E. Seaboard, 553 F.3d at 4 (internal citations, quotations marks and brackets omitted) (even though arbitration awards are accorded substantial deference, "there are limits to that deference... [and] [a] court may reverse an arbitrator's award on contractual grounds only where an award is contrary to the plain language of the contract and in instances where it is clear from the record that the arbitrator recognized the applicable law and then ignored it.")

However, in Hall Street Assocs., L.L.C. v. Mattel, Inc., ___ U.S. ___, 128 S.Ct. 1396, 1405, 170 L.Ed.2d 254 (2008) the Supreme

**CIVIL NO. 08-1611 (RLA)**                                               **Page 7**

Court limited the grounds applicable to vacate arbitration awards in actions brought under the FAA exclusively to those expressly listed in the statute. "On application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.' There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies."[1]

By so doing the court rejected the "manifest disregard of the law" standard of review in cases filed under the provisions of the federal arbitration statute. "Instead of fighting the text, it makes more sense to see the three provisions, §§ 9-11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Id*.

---

[1] The FAA at 9 U.S.C. § 10 provides the grounds for vacating awards while § 11 lists those pertinent to modifying or correcting an award. Pursuant to § 10(a), awards may be vacated "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

On the other hand, modifications under § 11 shall be warranted "(a) [w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award [;] (b) [w]here the arbitrators have awarded upon a matter not submitted to them.... [and] (c) [w]here the award is imperfect in matter of form not affecting the merits of the controversy."

**CIVIL NO. 08-1611 (RLA)**                                                                                              **Page 8**

In reaching its conclusion the Supreme Court reasoned that "[g]iven the emphasis on extreme arbitral conduct, the old rule of *ejusdem generis* has an implicit lesson to teach here. Under that rule, when a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows. Since a general term included in the text is normally so limited, then surely a statute with no textual hook for expansion cannot authorize contracting parties to supplement review for specific instances of outrageous conduct with review of just any legal error. 'Fraud' and mistake of law are not cut from the same cloth." *Id*. at 1404.

The Supreme Court stressed that its decision regarding the confined FAA review provisions was limited to proceedings instituted under the federal statute.

"In holding that §§ 10 and 11 provide exclusive regimes for the review provided by the statute, we do not purport to say that they exclude more searching review based on authority outside the statute as well. The FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable. But here we speak only to the scope of the expeditious judicial review under §§ 9, 10, and 11, deciding nothing about other possible avenues for judicial enforcement of arbitration awards." *Id*. at 1407.

**CIVIL NO. 08-1611 (RLA)**                                           **Page 9**

Following suit, in Ramos-Santiago, 524 F.3d at 124 n.3 the Court of Appeals recognized this limitation but left open the question of whether or not it was applicable to a case removed from state court similar to the one currently before us. In pertinent part the court stated:

> We acknowledge the Supreme Court's recent holding in *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, ___ U.S. ___, 128 S.Ct. 1396, 1401-04, 170 L.Ed.2d 254 (2008), that manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the Federal Arbitration Act ('FAA'). Because the case at hand is not an FAA case - neither party has invoked the FAA's expedited review provisions, and the original complaint was filed in Puerto Rico state court under a mechanism provided by state law - we decline to reach the question of whether *Hall Street* precludes a manifest disregard inquiry in this setting. Whether or not *Hall Street* applies, [plaintiff's] claim fails.

**ARGUMENT**

In support of its claim LOCAL 1575 argues that the arbitrator disregarded the CBA unambiguous provisions allowing for the recruitment of a floater and decided contrary to the intention of the parties. By doing so, petitioner contends, the employer acted with manifest disregard for the law. According to the Union, "the floater may only be used to perform tasks of personnel already working but

**CIVIL NO. 08-1611 (RLA)**                                                           **Page 10**

not to substitute or bump an employee who, even though available to work has not been called to work."[2]

    The CBA's provisions regarding the floater position read:

    ARTICLE VI- WORK HOURS

    . . .

    C. Terminal Work:

    3. . . .

    a.   Fixed Floater: A fixed floater will be recruited in the terminal operations from Monday to Friday. In the following manner: floater will be hired form the switchers list, by seniority, provided that they can perform the job functions of switcher, toploader, operator, longshoremen, driver, checker and gateman, in the yard. If no qualified floater is identified and hired from the switcher's list, then the Company may recruit a floater from any other classification. The fixed floater may be moved to any area and all classifications within the terminal, except aboard a vessel, as needed by the Company.

    After having received the evidence and considering the arguments of the parties in rendering his award, the arbitrator concluded as follows:

---

    [2] Award (docket No. 10-2) p. 11.

> The evidence admitted and uncontroverted establishes that the classification of 'floater' exists since 2001, and since that time, its functions or the use given to the same have not varied. From Monday to Friday and only in the 7:00 a.m. to 4:00 p.m. shift, the floater performs the functions of the fixed personnel (switcher, toploader, operator, logshoremen, driver, checker and gateman) that was called and is assigned in the yard, receiving and dispatching vans, and in operations typical of the terminal, while said personnel is enjoying its meal period.
>
> With the use of the floater, together with a flexible shift system (which allows staggered meal periods), it is purported to offer a continuous service in the terminal or that it not be interrupted or reduced because an employee is enjoying its meal period.

Arbitration Award (docket No. 10-2) pp. 13-14.

The UNION argues that because the floater's role is to cover the work recess periods of the fixed personnel, floaters cannot be recruited in the 6:00 a.m. and 7:00 a.m. shift.[3]

However, LOCAL 1575's arguments fail to persuade the court that the exceptional circumstances that justify vacating an arbitration award are present in this case. The court is satisfied that the arbitrator's interpretation of the provisions of the CBA regarding

---

[3] Opposition (docket No. 21) p. 6.

**CIVIL NO. 08-1611 (RLA)** **Page 12**

the use of the floater position is reasonable, his reasoning plausible and supported by the record. The fact that the floater may have been recruited early during the day does not necessarily render the award subject to vacatur.

Accordingly, we conclude that under the circumstances present in this case no valid grounds warrant disregarding the arbitrator's conclusion.

## CONCLUSION

Based on the foregoing, the Motion for Summary Judgment filed by HORIZON (docket No. **5**)[4] is **GRANTED** and the request to vacate the arbitrator's award is **DENIED**.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 6th day of March, 2009.

S/Raymond L. Acosta
RAYMOND L. ACOSTA
United States District Judge

---

[4] See Opposition (docket No. **21**).